UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALLEN MASSRE and MASS CAPITAL, LLC,

                                               Plaintiffs,

      - against -

THOMAS ALLEN BIBIYAN, a.k.a.
DEREK LEVITON,

                                               Defendant.
-----------------------------------------------------------------x

Index No.:

**COMPLAINT**

      Plaintiffs Allen Massre ("Massre") and Mass Capital, LLC ("Mass Capital") (collectively "Plaintiffs") by their attorneys Hofheimer Gartlir & Gross, LLP, complaining of the defendant Thomas Allen Bibiyan, a.k.a. Derek Leviton ("Bibiyan" or "Defendant"), respectfully allege that:

      1.     Thomas Allen Bibiyan is engaged in a wrongful campaign to ruin the reputation and business interests of Allen Massre and his company Mass Capital. In 2012, Bibiyan launched two separate "denial of service" ("DoS") attacks on www.epicstockpicks.com (the "Website"), a website owned and operated by Mass Capital, which is wholly owned by Massre. Defendant's attacks shut down the Website for several days. In addition, Bibiyan has blatantly defamed Massre and Mass Capital, by posting false statements about Massre on the website www.ripoffreport.com.

## THE PARTIES

      2.     Plaintiff Allen Massre is an individual who resides in New York City, New York. Massre is a citizen of the State of New York.

3. Plaintiff Mass Capital, LLC, formerly known as Mass Financial Group, LLC, is a Delaware limited liability company with its principal place of business in New York City, New York. Massre is the sole member and the president of Mass Capital. Mass Capital is engaged in the business of marketing and advertising companies. Mass Capital owns and operates the Website -- a news portal that reports breaking news on the stock market and publicly traded companies.

4. Upon information and belief, Defendant Thomas Allen Bibiyan is an individual who resides at 6446 W. 84th Street, Los Angeles CA 90045 and is a citizen of the State of California.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is conferred upon this Court by 18 U.S.C. § 1030 and 28 U.S.C. § 1331. This Court also has subject matter jurisdiction of this matter by reason of the complete diversity of citizenship between the parties, pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest, is in excess of Seventy Five Thousand Dollars ($75,000). Even if there were no diversity, this Court would have supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## THE FIRST "DENIAL OF SERVICE" ATTACK

7. Bibiyan and Massre are acquaintances.

8. Upon information and belief, Bibiyan despises Massre and is determined to harm him.

9. A "denial of service" ("DoS") attack is an attempt to prevent legitimate users from accessing information or services on a website.

10. A DoS attack occurs when the attacker floods the target website with emails and/or information requests, so that the website cannot respond to normal, legitimate user traffic. Legitimate users therefore experience a "denial of service" because they cannot access the target website.

11. On or about January 9, 2012, Bibiyan launched a DoS attack on Mass Capital's Website.

12. Bibiyan's January 9, 2012 DoS attack successfully flooded the Website with a myriad of emails and/or information requests, such that the Website was rendered inaccessible to users of the internet for two days.

13. At the time of Bibiyan's January 9, 2012 DoS attack, Bibiyan knew that Massre and Mass Capital were located in New York City, New York.

14. At the time of Bibiyan's January 9, 2012 DoS attack, Bibiyan was communicating with Massre and several other individuals in an internet chat room.

15. As Bibiyan launched his January 9, 2012 DoS attack, he informed Massre and the entire chat room that he was launching a DoS attack on the Website, taunted Massre, and dared Massre to sue him for causing the DoS attack.

16. In response to Bibiyan's blatantly wrongful conduct, Massre noted that Bibiyan had been the subject of a posting on www.ripoffreport.com, a website on which individuals may, without cost, post and publish their comments and complaints about companies and/or individuals.

17. The www.ripoffreport.com posting concerning Bibiyan (the "Bibiyan Ripoff Report") states that a United States District Court for the Southern District of California had entered a multi-million dollar default judgment against Bibiyan for fraud and securities laws violations.

18. After Massre cited the Bibiyan Ripoff Report, Bibiyan threatened Massre with future DoS attacks on the Website.

## THE SECOND "DENIAL OF SERVICE" ATTACK

19. On or about April 25, 2012, another DoS attack was launched upon the Website, which shut the Website down for a day.

20. Upon information and belief, Bibiyan launched the April 25, 2012 DoS attack on the Website.

21. At the time of the April 25, 2012 DoS attack, Bibiyan knew that Massre and Mass Capital were located in New York City, New York.

## THE DEFAMATORY WWW.RIPOFFREPORT.COM POSTING

22. On August 6, 2012, a posting entitled "Allen Massre nique27 CEO at Mass Financial Group Hofstra University Account Executive at Stellar Alliance Internet" was submitted to www.ripoffreport.com and published on the internet. A copy of that posting, available on the internet at www.ripoffreport.com/allen-massre/business-consultants/allen-massre-nique27-ceo-at-ma-0d9da.htm, is annexed hereto as Exhibit A (the "Massre Ripoff Report").

23. Upon information and belief, Bibiyan authored and published the Massre Ripoff Report.

24. Upon information and belief, Bibiyan authored and published the Massre Ripoff Report, among other reasons, to retaliate against Massre for publicly citing the Bibiyan Ripoff Report.

25. The Massre Ripoff Report states:

> Beginning in 2010 Allen Massre defrauded a number of investors in the New York City Garment District and then parlayed those gains into a ponzi scheme to entice investors to purchase squalid small cap companies, often worthless.
>
> As part of the fraudulent scheme, the New York state court determined that Allen Massre deceived numerous public companies and investors. and was ordered to disgorge the ill-gotten gains as a result. Criminal charges have yet to be pursued, although Judge Thompson issued the following statement:
>
> "Through his blatant fraud, Allen Massre was able to enrich himself at the expense of the investment community. This court further holds Allen Massre in contempt of court for willfully disregarding court orders and sanctions".
>
> As part of the indictment the securities and exchange commission also began an inquiry into the fraudulent nature of Massre's dealings since 2010, including wire fraud, mail fraud, and securities fraud.

26. All of the factual assertions in the Massre Ripoff Report are false.

27. Specifically, the initial opening statement, "Beginning in 2010 Allen Massre defrauded a number of investors in the New York City Garment District and then parlayed those gains into a ponzi scheme to entice investors to purchase squalid small cap companies, often worthless," is false.

28. Massre has never defrauded any investors anywhere and has never participated in any Ponzi scheme.

29. The statement that "As part of the fraudulent scheme, the New York state court determined that Allen Massre deceived numerous public companies and investors.

and was ordered to disgorge the ill-gotten gains as a result. Criminal charges have yet to be pursued, although Judge Thompson issued the following statement: 'Through his blatant fraud, Allen Massre was able to enrich himself at the expense of the investment community. This court further holds Allen Massre in contempt of court for willfully disregarding court orders and sanctions'" also is false.

30. Massre has never been before Judge Thompson. In fact, Massre has never even been named as a defendant in any civil or criminal case brought in New York State or in any other state. And in no court or other legal forum has Massre's conduct been found to be illegal or improper, and he has never been sanctioned by a court in any jurisdiction. The purported quote from Judge Thompson is a total fabrication.

31. Ironically, it appears that Bibiyan drew upon his own life experiences to create this false quote. Bibiyan himself was adjudged to have violated securities laws and committed fraud in a civil action in the United States District Court for the Southern District of California. In that action Bibiyan also was ordered to pay a multimillion dollar judgment and sanctioned for refusing to cooperate in the discovery process. The name of the case is *Schudel et. al. v. Searchguy.com et. al.*, 3:07-cv-00695-BEN-BLM.

32. The statement that "As part of the indictment the securities and exchange commission also began an inquiry into the fraudulent nature of Massre's dealings since 2010, including wire fraud, mail fraud, and securities fraud" also is false.

33. Massre has never been indicted. The Securities and Exchange Commission has never, to Massre's knowledge, conducted any investigation into Massre or any of his businesses. Indeed, as a matter of policy, the Securities and Exchange Commission conducts its investigations confidentially.

34. On or about August 20, 2012, Massre learned that a potential buyer of Mass Capital had viewed the Massre Ripoff Report and, due to the content of the Massre Ripoff Report, he was no longer interested in purchasing Mass Capital from Massre.

35. At the time this buyer lost interest in acquiring Mass Capital, said buyer had already submitted to Massre a signed Letter of Intent. The Letter of Intent stated a $2,200,000 purchase price for Mass Capital payable to Massre.

### FIRST CLAIM FOR RELIEF UNDER
### THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030.

36. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 35 above as if fully set forth herein.

37. Mass Capital's computers are used in interstate and foreign commerce.

38. On or about January 9, 2012 Bibiyan intentionally caused a DoS attack to be launched upon Mass Capital and the Website, by intentionally and repeatedly flooding the Website with information requests and/or emails.

39. Bibiyan did not have authorization from Mass Capital or Massre to launch the January 9, 2012 DoS attack.

40. Bibiyan's January 9, 2012 DoS attack prevented legitimate users from accessing the Website for two days.

41. Among other things, Bibiyan's January 9, 2012 DoS attack caused Mass Capital to incur expenses to re-secure and restore the Website.

42. Upon information and belief, on or about April 25, 2012 Bibiyan caused a second DoS attack to be launched upon Mass Capital and the Website, by intentionally and repeatedly flooding the Website with information requests and/or emails.

43. Bibiyan did not have authorization from Mass Capital or Massre to launch the April 25, 2012 DoS attack.

44. Bibiyan's April 25, 2012 DoS attack prevented legitimate users from accessing the Website for one day.

45. Among other things, Bibiyan's April 25, 2012 DoS attack caused Mass Capital to incur expenses to re-secure and restore the Website.

46. Bibiyan committed the acts alleged herein with full knowledge that they were wrong, and with the intent to injure Mass Capital and its owner, Massre. Plaintiffs are entitled to an award of exemplary and punitive damages in an amount appropriate to punish Bibiyan and to deter him from engaging in similar conduct in the future.

47. Plaintiffs have also suffered irreparable injury from the actions of Bibiyan, and due to the ongoing, continued threat of such injury, Plaintiffs have no adequate remedy at law, entitling Plaintiffs to injunctive relief as provided by 18 U.S.C. § 1030(g).

48. Bibiyan's actions constitute violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

49. By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief and monetary damages from Defendant in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF UNDER NEW YORK COMMON LAW DEFAMATION.

50. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 49.

51. As detailed above, the Massre Ripoff Report contains false statements.

52. Taken as a whole, the Massre Ripoff Report is understood to the average reader as communicating the false, defamatory and injurious meaning that Massre is a

scoundrel and a fraud who has been found to have violated securities laws by a New York court and that he is under investigation by the Securities and Exchange Commission.

53. The Massre Ripoff Report was published on the internet on August 6, 2012 and can still be viewed by any individual with internet access who is seeking legitimate information about Massre.

54. Bibiyan was negligent in failing to verify the veracity of the statements contained in the Massre Ripoff Report prior to publishing them on the internet.

55. Bibiyan acted with actual malice and reckless disregard for the truth of the statements contained in the Massre Ripoff Report he authored and published.

56. By writing and publishing the Massre Ripoff Report, Bibiyan caused Mass Capital and Massre to suffer substantial damages, as set forth more fully above.

57. The Massre Ripoff Report contains statements that are *per se* defamatory.

58. By reason of the foregoing, Plaintiffs are entitled to declaratory relief and monetary damages from Defendant in an amount to be determined at trial, but well in excess of $75,000.

### THIRD CLAIM FOR RELIEF UNDER
### NEW YORK COMMON LAW INJURIOUS FALSEHOOD.

59. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 58.

60. As set forth in detail above, Bibiyan made false and misleading statements about Massre and Mass Capital as part of a campaign to ruin the reputation and business interests of Massre and Mass Capital.

61. In doing so, Bibiyan acted maliciously, with the intent to harm Massre and Mass Capital with a reckless disregard for the consequences of his actions.

62. A reasonably prudent person would have or should have anticipated that Bibiyan's conduct would harm Plaintiffs.

63. Bibiyan's actions caused Plaintiffs to suffer substantial damages, as set forth above.

64. As a result of Bibiyan's wrongful acts, Massre and Mass Capital will continue to be damaged.

65. By reason of the foregoing, Plaintiffs are entitled to monetary damages in an amount to be determined at trial, but well in excess of $75,000.

### FOURTH CLAIM FOR RELIEF UNDER NEW YORK COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS.

66. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 65.

67. Upon information and belief, Bibiyan authored the false and defamatory Massre Ripoff Report.

68. Upon information and belief, Bibiyan published the false and defamatory statements in the Massre Ripoff Report knowing and believing that viewers of the Website, including without limitation potential clients and potential purchasers of Mass Capital, would read or come to know of the Massre Ripoff Report and, in reliance on the purported truth of the statements therein, would cease to visit the website, refrain from doing or cease to do business with Mass Capital and/or elect not to purchase Mass Capital.

69. In fact, a potential purchaser of Mass Capital read or came to know of the Massre Ripoff Report and, because of the Massre Ripoff Report, broke off negotiations with Massre for the purchase of Mass Capital.

70. Bibiyan's conduct is a wrongful interference with the conduct of Mass Capital's business and its relationships with clients and potential clients and existing viewers of the Website, and potential purchasers of Mass Capital.

71. Upon information and belief, Bibiyan was aware of the business relationships of Mass Capital, and Bibiyan deliberately and intentionally took action to interfere with those relationships.

72. As a direct and proximate result of Bibiyan's conduct, Plaintiffs have suffered damages with regard to its business relationships with the viewers of its website, clients and potential clients of Mass Capital, and potential purchasers of Mass Capital, including, without limitation, the loss of the sale of Mass Capital to a potential buyer for $2.2 million.

73. By reason of the foregoing, Plaintiffs are entitled to monetary damages in an amount to be determined at trial, but well in excess of $75,000.

### FIFTH CLAIM FOR RELIEF
### UNDER NEW YORK COMMON LAW PRIMA FACIE TORT.

74. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 73.

75. By engaging in the conduct outlined herein, Bibiyan intentionally inflicted harm upon, and interfered with, Plaintiffs' business operations and business relationships. Bibiyan inflicted these harms without any legal excuse or justification.

76. Bibiyan's conduct, which was motivated by malice, resulted in special damages to Plaintiffs.

77. By reason of the foregoing, Plaintiffs are entitled to monetary damages in an amount to be determined at trial, but well in excess of $75,000.

WHEREFORE, Plaintiffs respectfully demand judgment against the Defendant as follows:

A. On the First Claim for Relief, damages in an amount to be determined at trial;

B. On the Second Claim for Relief, damages in an amount to be determined at trial;

C. On the Third Claim for Relief, damages in an amount to be determined at trial;

D. On the Fourth Claim for Relief, damages in an amount to be determined at trial;

E. On the Fifth Claim for Relief, damages in an amount to be determined at trial;

F. An award of punitive damages in an amount to be determined at trial;

G. A preliminary injunction prohibiting Bibiyan from committing future DoS attacks upon Mass Capital and the Website during the pendency of this action;

H. A permanent injunction prohibiting Bibiyan from committing future DoS attacks upon Mass Capital and the Website;

I. A declaratory judgment stating that the webpage "www.ripoffreport.com/allen-massre/business-consultants/allen-massre-nique27-ceo-at-ma-0d9da.htm" is defamatory and contains false and defamatory statements;

J. An award of attorneys' fees and the costs of suit incurred herein; and

K. Such other further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL.

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
August 29, 2012

                          HOFHEIMER GARTLIR & GROSS, LLP

                          By: _____
                              Zachary Grendi (ZBG-5495)
                              Attorneys for Plaintiffs
                              530 Fifth Avenue
                              New York, New York 10036
                              Tel: (212) 818-9000