**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALLEN MASSRE and MASS CAPITAL, LLC,** | : |
| **Plaintiffs,** | : |
| | : |
| **- against -** | : |
| | : |
| **THOMAS ALLEN BIBIYAN a.k.a. DEREK LEVITON,** | : |
| | : |
| **Defendant.** | : |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-14-14

**REPORT AND
RECOMMENDATION**

**12 Civ. 6615 (KPF) (RLE)**

**To the HONORABLE KATHERINE POLK FAILLA, U.S.D.J.:**

## I.   INTRODUCTION

On August 29, 2012, Plaintiffs Allen Massre ("Massre") and Mass Capital, LLC ("Mass Capital"), filed a Complaint against Thomas Allen Bibiyan a.k.a. Derek Leviton ("Bibiyan") under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "Act" or "CFAA"), and included New York common law tort claims.  (Doc. No. 1.)  Bibiyan failed to file an Answer to the Complaint or otherwise appear in the matter.  The Honorable Jed S. Rakoff entered a default judgment against Bibiyan and referred the case to the undersigned for an inquest on damages on November 16, 2012.  (Doc. No. 16.)  On June 20, 2013, this case was reassigned to the Honorable Katherine Polk Failla.  (Doc. No. 19.)  Massre and Mass Capital seek a total of $958,982.46, which includes:  (1) $11,444.46 in damages for estimated business losses during two denial of service attacks in violation of the Act; (2) $50,000 in punitive damages for the denial of service attacks; (3) $100,000 in damages for defamatory statements posted by Bibiyan on a website; and (4) $797,538 in damages for the frustrated sale of Mass Capital that resulted from the alleged defamation.  For the reasons which follow, I recommend that Massre and Mass Capital be awarded damages of **$11,444.46.**

## II.   BACKGROUND

### A. Factual History

Massre is a New York resident and the sole member of Mass Capital.  (Compl. ¶¶ 2-3.)

Mass Capital owns and operates www.epicstockpicks.com ("Epic Stock Picks"), a news portal

that reports breaking news on the stock market.  (*Id.* at ¶ 3.)  Mass Capital generates revenue

through advertisements on its website.  (Aff. of Allen Massre in Supp. of Mot. for a Default J.

("Aff.") ¶ 27.)  Massre accuses Bibiyan of launching two "denial of service" ("DoS")[1] attacks on

Mass Capital's website (on January 9, 2012, and April 25, 2012), which Massre claims cost him

advertising revenue and reputational harm.  (Compl. ¶ 11-20.)  As a direct result of the DoS

attacks, Epic Stock Picks was inaccessible for a total of three days.  (Aff. ¶ 30.)

The causes of action in this case stem from a chain of juvenile acts performed by Massre

and Bibiyan while engaged in an online chat room conversation.  On January 9, 2012, Bibiyan

announced to the chat room "the take down of epicstockpicks.com for the next 24 hours" (Aff.

Ex. B), and challenged Massre to sue him.  (Compl. ¶ 15.)  In retaliation, Massre posted web

links to unfavorable articles and press releases about Bibiyan, and called Bibiyan "a serial scam

artist."  (Aff. Ex. B.)  Bibiyan responded with the following: "Allen Massre please stop unless

you want your site down for another week."  (*Id.*)  The chat room conversation continued in this

manner, with both parties slinging insults and threats at each other, for nearly an hour.  (*Id.*)

Several hours later, Massre's web hosting provider notified him that Epic Stock Picks was the

target of a DoS attack.  (Aff. Ex. A.)  On April 25, 2012, Massre received notice of another DoS

---

[1] A DoS attack is accomplished when an attacker floods a website with emails and information requests.
The effect is to block users from access to information or services on the website, rendering it inaccessible.  (Compl.
¶ 3.)

attack.  (Aff. Ex. D.)

On August 6, 2012, Bibiyan authored a posting on the Ripoff Report, a consumer reporting website that allows individuals to post complaints about companies or individuals online.  Bibiyan's report claimed, *inter alia*, that Massre had defrauded investors through a Ponzi scheme, and that civil and criminal charges were pending against Massre.  (Compl. ¶ 22, 25.)  Massre maintains the contents of the posting are fabricated.  (*Id.* at ¶¶ 26, 30, 32, 33.)  He further alleges that Bibiyan's fraudulent posting caused Massre to lose a potential buyer of Massre Capital.  (Compl. ¶¶ 34-35.)  In support of this contention, Massre has submitted a Letter of Intent ("LOI") signed by Green Bean Group LTD ("Green Bean") on July 25, 2012, to purchase Mass Capital for $2,200,000.  (Aff. Ex. G.)  He has also submitted an email from Green Bean on August 20, 2012, declaring the LOI null and void.  (Aff. Ex. H.)  Finally, Massre asserts that because of the Ripoff Report's policy of not removing any complaints from its website (Aff. Ex. I), Bibiyan's unfavorable and specious report on Massre remains online indefinitely, continuing to harm Massre's reputation.  (Aff. ¶ 68.)

**B. Procedural History**

Bibiyan was properly served with a Summons and Complaint on September 18, 2012.  (Decl. of Zachary Grendi in Supp. of Mot. for Default J. ("Decl.") ¶ 2.)  Bibiyan failed to serve and file an Answer.  (Decl. ¶ 3.)  On October 17, 2012, Judge Rakoff held a conference, but Bibiyan's counsel failed to attend.  (*Id.* at ¶ 7.)  On October 25, 2012, the Clerk of the Court entered a Certificate of Default against Bibiyan.  (Doc. No. 11.)  On November 7, 2012, Plaintiffs filed a Motion for Default Judgment, along with Declaration from Zachary Grendi, Plaintiffs' counsel, and an Affidavit from Allen Massre in support of the motion.  (*See* Doc. Nos. 12-15.)  Bibiyan failed to appear for a hearing on November 16, 2012, and the Court entered

default judgment against him.  (Doc. No. 16.)

The matter was referred to the undersigned, and this Court held an inquest conference on December 18, 2012.  The Court asked Plaintiffs' counsel if he had any evidence to support his clients' damages claims, or if an expert had determined the value of his clients' company.  Plaintiffs' counsel indicated that no expert had determined the value of the company.  The Court gave Plaintiffs an opportunity to submit supplemental material regarding the calculation of damages; Plaintiffs submitted no additional documentation.

### III.   DISCUSSION

#### A.  Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

#### B. Default Judgment and Inquest Standard

A party may move for a default judgment against an adversary who fails to answer or appear.  Fed. R. Civ. P. 55(b).  Following a default judgment, all well-pled factual allegations of the complaint, except those relating to damages, are accepted as true.  *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993).  A factual allegation will be deemed not well-pled only in "very narrow, exceptional circumstances."  *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679, 683 (S.D.N.Y. 1969), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973).

A court must conduct an inquest in order to determine the amount of damages with reasonable certainty, and it may make such determination without a hearing, "as long as it [has] ensured that there is a basis for the damages specified in the default judgment."  *TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc.*, 03 Civ. 517 (GBD) (RLE), 2005 WL 2063786, at *2

(S.D.N.Y. Aug. 16, 2005) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  Accordingly, the Court may rely on plaintiff's affidavits and documentary evidence in determining the reasonableness of the damages requested.  *See TMS Entm't Ltd.*, 2005 WL 2063786, at *2 (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)).  Here, during the inquest conference, Massre's counsel stated that an expert did not determine the value of Mass Capital.  No documentary evidence was submitted to the Court after the conference.  All damages claims are based on Massre's own calculations.

## C. Computer Fraud and Abuse Act

### 1.    Lost Profits

Under the CFAA, a person who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer" will be held liable in damages.  18 U.S.C. § 1030(a)(5)(A).  Section (g) allows a person who has suffered damage to bring "a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief," *id.* at § 1030(g), when that person has suffered a loss of more than $5,000 during a one-year period.  *Id.* at § 1030(c)(4)(A)(i)(I); *see Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005).  The Act defines "loss" as any reasonable cost to the victim and includes "any revenue lost, cost incurred, or other consequential damages."  18 U.S.C. § 1030(e)(11).  Courts in this jurisdiction have found that "losses" under the Act are compensable only when they "result from damage to, or the inoperability of, the accessed computer system." *Id.*; *see also Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004); *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 252 (S.D.N.Y. 2000).

Massre seeks compensation under Section (g) of the Act for the two DoS attacks.

(Compl. ¶¶ 48, 15, 20.) The record shows that Bibiyan communicated with Massre at the time of the January attack and challenged Massre to file suit. (Aff. Ex. B.) Just hours after the January chat room conversation, Massre was notified that Mass Capital's website had been the target of a DoS attack. (Aff. Ex. A.) Mass Capital generates all of its revenue through advertisements on its website and communications with customers who visit the website. (Aff. ¶ 27.) Massre has therefore shown that Bibiyan knowingly attacked Mass Capital's website on January 9, 2012, and that he may be entitled to damages under 18 U.S.C. § 1030(a)(5)(A).

Massre has failed to present documentary evidence of his economic losses in conjunction with the January DoS attack. However, Massre has submitted sworn statements regarding Mass Capital's average daily revenue (Aff. ¶¶ 31-33). He states: "[u]sing the average daily revenue generated by Mass Capital between September 1, 2011 and August 31, 2012 ($3,814.82), I have calculated the Bibyan's two DoS attacks on the [w]ebsite caused Mass Capital $11,444.46 in damages." (*Id.* at 31.) He has submitted documentary proof that the DoS attacks occurred on January 9, 2012, and on April 25, 2012. (Aff. Exs. A, D.) Massre submitted sworn statements that two DoS attacks caused the website to be inoperable for three days total. (Aff. ¶ 30.) Therefore, I recommend that Plaintiffs be awarded $11,444.46 in damages for lost profits.

## 2. Punitive Damages

Massre also asks the Court to grant him $50,000 in punitive damages for violations of 18 U.S.C. § 1030 "to discourage Bibiyan from launching future DoS attacks on Mass Capital." (*Id.* at ¶ 34.) Through punitive damages, Massre seeks to "deter" Bibiyan "with a stern award," which "will serve as notice to Bibiyan and other hackers that the Courts will not tolerate illegal DoS attacks on legitimate businesses." (*Id.* at ¶ 35.)

Massre's arguments are unavailing. The Act expressly limits damages to "compensatory

damages and injunctive relief or other equitable relief ."  18 U.S.C. § 1030(g); *see also Nexans Wires S.A.*, 319 F. Supp. 2d 468, 472-475; *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 522 (S.D.N.Y. 2001).  Therefore, I recommend that the punitive award claim be **DENIED.**

**D.    New York State Law Claims**

   **1.    Damages Under New York Defamation Law**

   Massre claims that Bibiyan's posting on the Ripoff Report contains statements that are *per se* defamatory.  (Compl. ¶ 57.)  Defamation is the injury to one's reputation, either by written expression (libel) or oral expression (slander).  *Penn Warranty Corp. v. DiGiovanni*, 10 Misc. 3d 998, 1002 (N.Y. 2005) (citing *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453 (1967)).  "To establish a prima facie case of personal injury based on the publication of libel or slander, all of the following elements are required: 1) a false and defamatory statement of and concerning the plaintiff; 2) publication by defendant of such a statement to a third party; 3) fault on part [sic] of the defendant; and 4) injury to plaintiff."  *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).  Libel *per se* is actionable if the language "tends 'to induce an evil opinion of one in the minds of right-thinking persons and to deprive one of one's confidence and friendly intercourse in society' or tends to disparage a person in the way of his office, profession or trade."  *Id.* at 367 (citing *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 136 (1959).  "Damages are awardable only if [Plaintiff's] reputation received some injury measurable in dollars, or if such publication caused some other actionable harm."  *Pirre v. Printing Devs., Inc.*, 468 F. Supp. 1028, 1036 (S.D.N.Y. 1979).

   Massre has submitted a sworn statement that the accusations in Bibiyan's posting on the Ripoff Report are false.  (Aff. ¶ 39.)  He asserts that he is a "successful businessman" and that the posting gives the impression to readers that Massre is a "criminal, fraud, and scoundrel."

(Compl. ¶¶ 50, 52-53.)  However, Massre has submitted no evidence regarding his reputation prior to the posting, or about the current status of his reputation.  He acknowledges that it is "impossible" for him "to know exactly how much business Mass Capital has lost or will lose because of the false Massre Ripoff Report."  (*Id.* at ¶ 52.)  He has provided no estimate of how many people viewed the posting, or how viewers' opinions of him may have been altered.  Massre has failed to show that he has suffered a reputational injury "measurable in dollars." *Pirre*, 468 F. Supp. at 1036.

Massre further claims that the posting "is the first hit that appears" when the name Allen Massre is searched on the internet, which causes permanent damage to his name "everyday." (Aff. ¶ 49.)  However, when this Court attempted to view the posting using a popular search engine, it found that the posting had been removed from the Ripoff Report website on May 6, 2013.  The site provides: "A neutral and independent Arbitrator has determined that the following report contained one or more false statements of fact."  *Complaint Review: Allen Massre*, Ripoff Report (Oct. 03, 2013), http://www.ripoffreport.com/r/Allen-Massre/internet/ Complaint-Review-Allen-Massre-Notice-Ripoff-Report-VIP-Arbitration-Decision-A-neutral-92 2995#comment_1.  Because the disparaging posting has been removed, there is no basis for Massre to claim that the posting continues to cause damage to his reputation.  The posting was viewable from August 6, 2012, until May 6, 2013.  Massre has submitted no documentation proving his reputation suffered a negative impact during those nine months.  It is impossible for the Court to calculate Massre's reputation damages with so little relevant information.  I therefore recommend that Massre claim for defamation damages be **DENIED**.

2.  **Damages under New York Injurious Falsehood, Tortious Interference with Business Relationships, and Prima Facie Tort**

Massre's final claim is that he is entitled to $797,538 because the Ripoff Report prevented him from selling Mass Capital to Green Bean. (Aff. ¶ 67.) Massre's requested damages amount, $797,538, represents the difference between the proposed purchase price, $2,200,000, and Mass Capital's 2011 revenues. (*Id.*) Although Massre's Complaint sets forth three separate New York torts – injurious falsehood, tortious interference with a business relationship, and prima facie tort (*see* Compl. ¶¶ 59-77) – his Affidavit fails to name a specific cause of action. Because the Affidavit is ambiguous, each tort will be reviewed in turn. Under New York law, statements that denigrate the quality of a party's goods or services may provide a basis for an injurious falsehood claim. *In Touch Concepts, Inc. v. Cellco P'ship*, No. 13 Civ. 1419 (PKC), 2013 WL 2455923, at *29 (S.D.N.Y. June 4, 2013). A claim for injurious falsehood differs from defamation *per se* in that it requires the pleading of special damages. *Id.* at *30, n.30 (citing *Glazier v. Harris*, 99 A.D.3d 403, 404 (1st Dep't 2012) (claim for slander per se need not plead special damages); *DiSanto v. Forsyth*, 258 A.D.2d 497, 498 (2d Dep't 1999) (claim for injurious falsehood must plead special damages)). Monetary damages for injurious falsehoods are awarded only when the plaintiff has shown special damages with "requisite specificity." *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02 Civ. 9567 (KNF), 2003 WL 22410623, at *7 (S.D.N.Y. Oct. 21, 2003); *Drug Research Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 440-41 (1960). In other words, "actual losses must be identified and causally related to the alleged tortious act." *L.W.C. Agency, Inc. v. St. Paul Fire & Marine Ins. Co.*, 125 A.D.2d 371, 373 (2d Dep't 1986).

Here, while it is true that Bibiyan's posting on the Ripoff Report impugned Massre's

9

character, Massre has failed to submit any documentary evidence of actual losses related to the posting. He has submitted no documentary evidence as proof of Mass Capital's 2011 revenues. Even if there were evidence to corroborate Massre's assertions regarding revenues, there is an additional deficiency in Massre's arguments. Despite Massre's assertion that posting "clearly caused Green Bean to terminate its interest in acquiring Mass Capital" (Aff. ¶ 63), the record is not "clear." In an email dated August 20, 2012, Green Bean faults Massre's two-week "lapse in communication" "regarding the conflict from 'divulgence of sensitive information'" as the reason for the termination of the LOI. (Aff. Ex. H.) Absent other evidence that links the termination of the sale to the Ripoff Report, Massre's claim for injurious falsehood must fail. Tortious interference with a business relationship results when: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). Again, because Massre has not shown that Bibiyan's act of authoring and posting negative comments about Massre on the Ripoff Report was the impetus for the termination of the LOI, this claim cannot be sustained.

Finally, the doctrine of prima facie tort "is based upon the doing of a harm maliciously or malevolently 'for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired.'" *Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 40 (2d Cir. 1982) (citing *Aikens v. Wisconsin*, 195 U.S. 194, 203). Massre has not demonstrated that Bibiyan acted solely for the sake of harming Massre. Therefore, I recommend that Massre's damages claims for injurious falsehood, tortious interference with a business relationship, and prima facie tort be **DENIED**.

10

## III.   CONCLUSION

For the foregoing reasons, I recommend that Plaintiffs recover **$11,444.46 IN DAMAGES FOR LOST PROFITS**, and that the remaining damages claims be **DENIED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Katherine Polk Failla, 40 Foley Square, Room 618, and to the chambers of the undersigned, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED**: **February 13, 2014**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge