```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 16, 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                       :
ALLEN MASSRE and MASS CAPITAL,                         :
LLC,                                                   :
                                                       :
                              Plaintiffs,              :   12 Civ. 6615 (KPF)
                                                       :
              v.                                       :   ORDER ADOPTING
                                                       :   REPORT AND
THOMAS ALLEN BIBIYAN a.k.a. DEREK                      :   RECOMMENDATION
LEVITAN,                                               :
                                                       :
                              Defendant.               :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      On November 16, 2012, this Court entered a default judgment against Defendant Thomas Allen Bibiyan, a.k.a. Derek Levitan, and referred the matter to the Honorable Ronald L. Ellis, United States Magistrate Judge, for an inquest into damages. Pending before the Court is Judge Ellis's Report and Recommendation, dated February 13, 2014 (the "Report"). (Dkt. #20). In the Report, Judge Ellis recommends that Plaintiffs Allen Massre and Mass Capital, LLC be awarded $11,444.46 in damages for lost profits, and that Plaintiffs' remaining claims for damages be denied. For the reasons set forth below, the Report is adopted in full.

## BACKGROUND[1]

### A.  Plaintiffs' Allegations Against Defendant

The relevant facts underlying this action are set forth in the Report.  Only those facts pertinent to assessing the Report are recited here.

On August 29, 2012, Plaintiffs commenced this action against Defendant Bibiyan.  (Dkt. #1).  Plaintiffs brought claims alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), as well as claims under the common law of New York State for defamation, injurious falsehood, tortious interference with business relationships, and prima facie tort.  (*Id.*). Plaintiffs' claims pertained to (i) Defendant's launch of two "denial of service" ("DoS")[2] attacks on Mass Capital's website, www.epicstockpicks.com ("Epic Stock Picks"), on January 9 and April 25, 2012 (Compl. ¶¶ 11-20), and (ii) Defendant's post of an entry (the "Massre Ripoff Report") on the Ripoff Report, a consumer reporting website, on August 6, 2012, that claimed, among other things, that Massre was facing civil and criminal charges because of his involvement in a Ponzi scheme (*id.* at ¶¶ 22-25).[3]

Plaintiffs alleged that as a result of the Massre Ripoff Report, a potential buyer of Mass Capital decided not to purchase the company from Massre

---

[1]  The facts set forth herein are taken from the Complaint ("Compl.") (Dkt. #1); the Declaration of Zachary Grendi in Support of Motion for Default Judgment ("Grendi Decl.") (Dkt. #13); and the Affidavit of Allen Massre in Support of Motion for Default Judgment ("Massre Aff.") (Dkt. #14).

[2]  "A DoS attack occurs when the attacker floods the target website with e-mails and/or information requests, so that the website cannot respond to normal, legitimate user traffic.  Legitimate users therefore experience a 'denial of service' because they cannot access the target website."  (Compl. ¶ 10).

[3]  Massre is a New York resident and the sole member of Mass Capital.  (Compl. ¶¶ 2-3).

2

because of the content contained in that report. (Compl. ¶ 34). According to Plaintiffs, prior to withdrawing the offer, the potential buyer had submitted a letter of intent to purchase Mass Capital for $2,200,000. (*Id.* at ¶ 35).

Plaintiffs requested a total of $958,982.46 in damages. This figure comprised: (i) $11,444.46 for the estimated revenue losses to Epic Stock Picks caused by the two DoS attacks, as violations of the CFAA (Massre Aff. ¶ 31);[4] (ii) $50,000 in punitive damages for the DoS attacks, also in violation of the CFAA (*id.* at ¶¶ 34-35); (iii) $100,000 in damages for defamatory statements posted by Defendant on the Ripoff Report website (*id.* at ¶ 69); and (iv) $797,538 in damages for the unsuccessful sale of Mass Capital that Plaintiffs allege was the result of Defendant's defamation (*id.* at ¶ 67).

**B.    Procedural History**

Plaintiffs commenced this action on August 29, 2012 (Dkt. #1), and filed proof of service of the Summons and Complaint on Defendant on September 21, 2012 (Dkt. #2). Defendant failed to serve and file an answer or otherwise respond to the Complaint. (Grendi Decl. ¶ 3). On October 9, 2012, Plaintiffs' counsel received a fax from Hamid Soleimanian, Esq., stating that he was representing Defendant in this action. (*Id.* at ¶ 6).

On October 17, 2012, the Honorable Jed S. Rakoff, the United States District Judge then assigned to this case, held an initial conference, but

---

[4]    Plaintiffs indicate that Defendant's two DoS attacks on Epic Stock Picks cost Mass Capital between $11,444.46 and $11,527.08 in lost revenue, and affirm that they would be adequately compensated if they were awarded either of these two figures. (Massre Aff. ¶¶ 31-33).

Defendant failed to appear despite Defendant's counsel having notice of this conference. (Grendi Decl. ¶ 7). On October 18, 2014, Plaintiffs' counsel left a telephone message for Defendant's counsel informing him of what had occurred at the October 17 conference, and advising that Plaintiffs were moving forward with a default judgment. (*Id.* at ¶ 8). Defendant's counsel did not respond to the telephone call. (*Id.*).

On October 19, 2012, Plaintiffs' counsel served Plaintiffs' Request to Enter Default of Defendant Bibiyan on Defendant's counsel (Grendi Decl. ¶ 9), and on October 25, 2012, Plaintiffs moved for entry of default against Defendant (Dkt. #8, 10). The Clerk of Court entered a Certificate of Default against Defendant on October 25, 2012. (Dkt. #11). On that next day, October 26, 2012, Plaintiffs' counsel served Defendant's counsel with a copy of the Certificate of Default issued by the Clerk, along with a letter informing Defendant's counsel that Plaintiffs would move for a default judgment returnable on November 8, 2012. (Grendi Decl. ¶ 10).[5]

On November 7, 2012, Plaintiffs filed a Motion for Default Judgment. (Dkt. #12), and served a copy of that motion on Defendant's counsel (Grendi Decl. ¶ 12). The Court held a default judgment hearing on November 16, 2012, at which neither Defendant nor his counsel appeared. (Dkt. #16). On that same day, the Court entered a default judgment against Defendant and referred the matter to Judge Ellis for inquest on damages. (*Id.*).

---

[5] Plaintiffs' counsel subsequently informed Defendant's counsel on November 6, 2012, that the return date on the motion for a default judgment had been adjourned to November 16, 2012. (Grendi Decl. ¶ 11).

4

On December 18, 2012, Judge Ellis held an inquest conference at which Plaintiffs' counsel, but neither Defendant nor his counsel, appeared. At the conference, Plaintiffs' counsel informed the Court that no expert had determined the value of Mass Capital. (Report 4). The Court provided Plaintiffs with an opportunity to submit supplemental material in support of their damages claims; Plaintiffs did not submit any additional documentation. (*Id.*).

On June 20, 2013, this case was reassigned from Judge Rakoff to the undersigned. (Dkt. #19). On February 14, 2014, Judge Ellis issued the Report recommending that Plaintiffs be awarded $11,444.46 in damages for lost profits, and that their remaining claims for damages be denied. (Report 11). The Report directed the parties to file any written objections to the Report with the Court within 14 days of being served with the Report, and advised the parties that failure to object within 14 days would result in waiver of objections and would preclude appellate review. (*Id.*).

Objections to the Report were due on or about March 3, 2014.[6] As of the date of this Order, no objections have been filed, and no applications for an extension of time to object have been received.

## DISCUSSION

**A.    The Standard of Review**

When deciding whether to adopt a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or

---

[6]    The Court file indicates that a copy of the Report was mailed to Defendant when it was issued on February 14, 2014.

5

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court conducts a *de novo* review of those portions of a report and recommendation to which a party submits a timely objection. (*Id.*). "To accept those portions of the report to which no timely objection has been made, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *King* v. *Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (quoting *Wilds* v. *United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)), *aff'd*, 453 F. App'x 88 (2d Cir. 2011) (summary order); *see also Brown* v. *Time Warner Cable, Inc.*, No. 10 Civ. 8469 (AJN) (RLE), 2012 WL 5878751, at *1 (S.D.N.Y. Nov. 21, 2012).

Further, a party's failure to object timely to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver both of the party's right to object to the report and recommendation and of the right to challenge the report and recommendation on appeal. *See Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992) ("We have adopted the rule that failure to object timely to a report waives any further judicial review of the report.").

**B. Analysis**

    **1. The Parties Have Waived Their Right to Object to, and to Obtain Appellate Review of, the Report**

As noted, Judge Ellis informed the parties that they had 14 days after being served with a copy of the Report to file any objections, and warned that failure to file a timely objection would result in a waiver to do so, and a waiver of the right to object on appeal. (Report 11). Having received clear notice of the

consequences of remaining silent, and having neither filed objections nor requested extensions of time in which to do so, the parties have waived their right to object to the Report and their right to obtain appellate review of the Report. *See Li Ping Fu* v. *Pop Art Int'l, Inc.*, No. 10 Civ. 8562 (DLC), 2011 WL 6092309, at *2 (S.D.N.Y. Dec. 7, 2011) (identifying that "[t]he parties' failure to file written objections precludes appellate[ ] review of [the] decision," except as to an issue not addressed in the report and recommendation); *see also United States* v. *Male Juvenile*, 121 F.3d 34, 38-39 (2d Cir. 1997) (same).

### 2. The Court Adopts the Report in Its Entirety

A review of the Report's recommendations for clear error reveals none. The recommendations are firmly supported by fact and law. The Court will address each of the recommendations in turn.

#### a. Damages Under the CFAA

The Report correctly recommends that Plaintiffs be awarded $11,444.46 in damages for lost profits, and no punitive damages for Defendant's violations of the CFAA. (Report 5-6). The CFAA permits a victim to recover "any revenue lost, cost incurred, or other consequential damages," 18 U.S.C. § 1030(e)(11), and courts in this District limit damages to those that "result from damage to, or the inoperability of, the accessed computer system." *Civil Ctr. Motors, Ltd.* v. *Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005); *see also Nexans Wires S.A.* v. *Stark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) ("[T]he meaning of 'loss,' [under the CFAA] … has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred

because the computer's service was interrupted."). The plain language of the CFAA statute precludes an award of punitive damages. The statute provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain *compensatory damages and injunctive relief or other equitable relief.*" 18 U.S.C. § 1030(g) (emphasis added). This does not include punitive damages.

Plaintiff Massre submitted a sworn statement affirming losses in revenue caused by Defendant's two DoS attacks at between $11,444.46 and $11,527.08, and informed the Court that Plaintiffs would be adequately compensated if they were awarded $11,444.46. (Massre Aff. ¶¶ 31-33). Plaintiffs also sought punitive damages in the amount of $50,000 for Defendant's CFAA violations, in order to "discourage [Defendant] from launching future DoS attached on Mass Capital." (*Id.* at ¶¶ 34-35). Although Plaintiffs are entitled to lost revenues, they are not entitled to punitive damages under the CFAA for the reasons just explained. Accordingly, Judge Ellis's recommendation to award Plaintiffs their lost revenues in the amount of $11,444.46, but deny their request for punitive damages, was well reasoned and supported by law.

### b. Damages for Plaintiffs' Defamation Claim

Plaintiffs also request an award of $100,000 "for damages caused to [Massre's] reputation by the false Massre Ripoff Report." (Massre Aff. ¶ 69). Under New York law, "[w]hen statements fall within' established categories of per se defamation, 'the law presumes that damages will result, and they need

not be alleged or proven.'" *Zherka* v. *Amicone*, 634 F.3d 642, 645 (2d Cir. 2011); *accord Celle* v. *Fillipino Reporter Enter. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) ("If a statement is defamatory per se, injury is assumed."). At the same time, "[w]hile a pleading of special damages is not necessary in a case of defamation per se, there must be something that addresses the element of injury to reputation." *Sandals Resorts Int'l Ltd.* v. *Google, Inc.*, 86 A.D.3d 32, 39 (1st Dep't 2001); *see also Ferguson* v. *Sherman Square Realty Corp.*, 30 A.D.3d 288, 289 (1st Dep't 2006) (holding that the plaintiffs did not state a cause of action for defamation per se where the complaint did not show that the alleged defamatory statements were damaging to their professional reputations).

Some courts recognize that in defamation per se cases, "[e]ven where the plaintiff can show no actual damages at all, a plaintiff who has otherwise shown defamation may recover at least nominal damages." *Celle*, 209 F.3d at 179 (internal quotation marks omitted); *Van-Go Transport Co., Inc.* v. *New York City Bd. of Educ.*, 971 F. Supp. 90, 100 (E.D.N.Y. 1997) ("Even where the plaintiff can show no actual damages at all [in a defamation *per se* case], a plaintiff who has otherwise shown defamation may recover at least nominal damages."); *Suckenik* v. *Levitt*, 177 A.D.2d 416, 416 (1st Dep't 1991) (awarding nominal damages of one cent where the plaintiff failed to establish actual damages). The decision to award nominal damages is not, however, obligatory. *See Celle*, 209 F.3d at 179 ("[A] plaintiff who has otherwise shown defamation *may* recover at least nominal damages." (emphasis added)). As relevant here,

9

"a writing which tends to disparage a person in the way of his office, profession or trade, is defamatory per se and does not require proof of special damages." *Id.* (internal quotation marks omitted).

As Judge Ellis noted, Plaintiffs allege that the Massre Ripoff Report contains false statements that are per se defamatory. (Report 7; Compl. ¶ 57). The Complaint supports this conclusion in that the quoted portions of the Ripoff Report tend to disparage Massre in the way of his profession. For example, the author of the Massre Ripoff Report (which, taking Plaintiffs' allegations as true, was Defendant) alleged that Massre had defrauded "a number of investors"; that a New York State court judge had stated, in connection with holding Massre "in contempt of court for willfully disregarding court orders and sanctions," that "[t]hrough [Massre's] blatant fraud, [he] was able to enrich himself at the expense of the investment company"; and that the Securities and Exchange Commission had begun "an inquiry into the fraudulent nature of Massre's dealings since 2010, including wire fraud, mail fraud, and securities fraud." (Compl. ¶ 25 (quoting Massre Ripoff Report)).

However, even if these statements were defamatory per se, Plaintiffs failed to identify a basis for the $100,000 in damages they sought to recover. As a result, Judge Ellis recommended that damages for Plaintiffs' defamation claim be denied for the precise reason that Massre had failed to submit evidence regarding his reputation prior to the report being posted, his current reputation, and how much business Mass Capital lost or would have lost as a result of the report. (Report 8). Judge Ellis also noted that as of May 6, 2013,

the Massre Ripoff Report was removed from the Ripoff Report website, and as such there was no basis for Massre to claim that the report continued to cause damage to his reputation. (*Id.*). Judge Ellis further recognized that Massre had failed to submit evidence proving that his reputation had suffered negatively during the nine months when the Massre Ripoff Report was available online. (*Id.*). On this record, the Court finds that Judge Ellis correctly concluded that Plaintiffs had failed to establish that Massre's reputation was injured, and that the recommendation that Plaintiffs be denied damages for their defamation claim was not clear error. *See Sandals Resorts Int'l Ltd.*, 86 A.D.3d at 39 (holding that the New York Supreme Court did not err in "reasoning that the failure to allege the nature of the injuries caused by the statement was fatal to the petition"). Judge Ellis could have awarded Plaintiffs nominal damages, *see, e.g.*, *Celle*, 209 F.3d at 179, but he was not obligated to do so, *id.*, and his determination not to award such damages was not clear error. Moreover, and as the Court noted more generally above, Plaintiffs, who received clear notice of the consequences of not filing objections, failed to submit any objection to Judge Ellis's recommendation that they be denied damages for their defamation claim. As a consequence, Plaintiffs have waived their right to appeal this Court's adoption of Judge Ellis's recommendation on this point, or any other.

      **c.    Damages for Plaintiffs' Remaining New York State Law Claims**

Plaintiffs attested that they are entitled to $797,538 for damages incurred as a result of the Massre Ripoff Report thwarting the sale of Mass

11

Capital to the potential buyer.  (Massre Aff. ¶ 67).  This sum represents the difference between the proposed purchase price offered for Mass Capital and the company's 2011 revenues.  (*Id.*).  Judge Ellis properly recommended that Plaintiffs not be awarded the damages sought.  As did Judge Ellis, the Court construes Plaintiffs' request for $797,538 as relating to their claims under New York State law for injurious falsehood, tortious interference with a business relationship, and prima facie tort.  (Report 9).  Because Plaintiffs did not specify the particular causes of action for which they sought these damages, Judge Ellis prudently assessed the propriety of awarding these damages under all three claims.  (*Id.*).

Starting with Plaintiffs' claim for injurious falsehood, as Judge Ellis aptly identified, Plaintiffs needed to establish special damages.  (Report 9).  *See Murphy-Higgs* v. *Yum Yum Tree, Inc.*, 112 F. App'x 796, 797 (2d Cir. 2004) (summary order) ("Under New York tort law, special damages are an essential element of the tort of injurious falsehood … [and] claimants must provide proof of itemized damages." (internal quotation marks omitted)); *In Touch Concepts, Inc.* v. *Cellco P'ship*, 949 F. Supp. 2d 447, 484 n.30 (S.D.N.Y. 2013) ("A claim for injurious falsehood, unlike a claim for defamation *per se* requires the pleading of special damages."); *DiSanto* v. *Forsyth*, 258 A.D.2d 497, 498 (2d Dep't 1999) ("Special damages, which are an essential element of both injurious falsehood and prima facie tort, must be pleaded with sufficient specificity").  To plead special damages for a claim of injurious falsehood, "actual losses must be identified and causally related to the alleged tortious

act." *In Touch Concepts, Inc.*, 949 F. Supp. 2d at 484 n.30 (quoting *L.W.C. Agency, Inc.* v. *St. Paul Fire and Marine Ins. Co.*, 125 A.D.2d 371, 373 (2d Dep't 1986)).

Here, Judge Ellis correctly found that Plaintiffs had not met this burden. Plaintiffs failed to offer any evidence to establish actual losses as a result of the Massre Ripoff Report. To start, Massre did not submit evidence to substantiate the revenue that he claimed Mass Capital earned in 2011. More than that, the documentary evidence regarding the potential buyer's reason for withdrawing his offer makes clear that the offer was withdrawn because the buyer had not heard from Massre in "nearly 2 weeks" regarding "the conflict from 'divulgence of sensitive information,'" and, further, that because of the "lapse in communication," the buyer had "decided to move on." (Massre Aff., Ex. H). Consequently, there is no proof connecting the Massre Ripoff Report to the buyer's decision to withdraw the offer for Mass Capital.

Moving on to Plaintiffs' claim for tortious interference with a business relationship, Plaintiffs must establish that "[i] the plaintiff had business relations with a third party; [ii] the defendant interfered with those business relations; [iii] the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and [iv] the defendant's acts injured the relationship." *Catskill Dev., L.L.C.* v. *Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). Judge Ellis properly concluded that because Plaintiffs had not demonstrated that Defendant's act of posting the Massre Ripoff Report

"injured" Plaintiffs' relationship with the potential buyer, Plaintiffs had failed to establish the fourth element of this claim.

Finally, under New York law, four elements are necessary to establish a claim for prima facie tort: "[i] an intentional infliction of harm; [ii] without excuse or justification and motivated solely by malice; [iii] resulting in special damages; [iv] by an act that would otherwise be lawful." *United States for Use and Benefit of Evergreen Pipeline Const. Co., Inc.* v. *Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996). As Judge Ellis recognized, Plaintiffs have not established that Defendant's conduct was motivated solely by a malicious intent to harm Plaintiffs. For that reason alone, Plaintiffs have failed to establish their claim for prima facie tort, and are not entitled to damages for that claim. *See McKenzie* v. *Dow Jones & Co., Inc.*, 355 F. App'x 533, 536 (2d Cir. 2009) (summary order) ("New York courts have been very strict in holding that a cause of action for prima facie tort will not lie unless the actions complained of can be plausibly said to have been motivated solely by malice towards the plaintiff."). Plaintiffs' claim also fails for the independent reason that they failed to establish special damages, as discussed above.

Accordingly, Judge Ellis properly recommended that Plaintiffs be denied damages for their claims for injurious falsehood, tortious interference with a business relationship, and prima facie tort.

## CONCLUSION

Because the Court has adopted the Report in its entirety, it is hereby ORDERED that the Clerk of Court enter judgment in favor of Plaintiffs and against Defendant for $11,444.46 in lost profits for Defendant's violation of the CFAA.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: June 16, 2014
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this was mailed by Chambers to*:
Thomas Allen Bibiyan
6446 W. 84th Street
Los Angeles, CA 90045